**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHAWNA JANA'E PANNELL<br>814 N. June Street<br>Philadelphia, PA 19139 | :<br>:<br>: |
| Plaintiff, | :<br>:     CIVIL ACTION<br>: |
| v. | :     CASE NO:<br>: |
| CITY OF PHILADELPHIA<br>o/a PHILADELPHIA JUVENILE<br>JUSTICE CENTER (PJJSC)<br>1401 JFK Blvd. MBS PI<br>Philadelphia, PA 19102 | :<br>:     **JURY TRIAL DEMANDED**<br>:<br>:<br>: |
| Defendant. | :<br>: |

**CIVIL ACTION COMPLAINT**

Plaintiff, Shawna Jana'e Pannell (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      Plaintiff has initiated this action to redress violations by the City of Philadelphia o/a the Philadelphia Juvenile Justice Center (PJJSC) (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq*.)/the Pregnancy Discrimination Act ("PDA"), the Pregnant Workers Fairness Act ("PWFA" - Pub. L. No. 117-328, 136 Stat. 4459 (2022)), the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), the Philadelphia Fair Practices Ordinance ("PFPO"), and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff was subjected to discrimination and retaliation, and she has suffered damages more fully described/sought herein.

**JURISDICTION AND VENUE**

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.  There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC").  Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

6.      Plaintiff has properly exhausted her administrative remedies regarding her PHRA and PFPO claims by dual-filing her Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and by waiting at least one year since the filing before asserting her PHRA and PFPO claims.

**PARTIES**

7.      The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

8.      Plaintiff is an adult who resides at the above-captioned address.

9.      The City of Philadelphia o/a the Philadelphia Juvenile Justice Center (PJJC) is the City of Philadelphia's juvenile detention center where minors are held pending criminal trial, located at the above captioned address. The Philadelphia Department of Human Services supervises the minors housed at the at the PJJSC and provides counselling and education services.

10.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

11.     The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

12.     Plaintiff was hired on or about October 16, 2023, as a Juvenile Detention Counselor for Defendant's detention center located at 91 N. 48th Street, Philadelphia, PA 19139.

13.     Relevant management during Plaintiff's employment with Defendant were: Counselor, Karen Stokes (hereinafter "Stokes"), Shift Manager, Gregory Alexander (hereinafter "Alexander"), Detention Counselor/Supervisor Training, Ebony Mitchell (hereinafter "Mitchell"), Ms. Harris-Campbell (first name unknown, hereinafter "Harris-Campbell"), Director of Residential Services, Norman Bell, III (hereinafter "Bell"), Director, Ms. Boyd (first name unknown, hereinafter "Boyd"), and Director of Programming, Kimberly Broughton (hereinafter "Broughton").

3

14.     Throughout Plaintiff's employment with Defendant, she was a hard-working employee who performed her job well.  In fact, she had been promoted from a Counselor Trainee to a Counselor I on or about April 16, 2024.

15.     Plaintiff is an adult female, and on or about April 23, 2024, Plaintiff informed Defendant's management that she was pregnant and entering her second trimester.

16.     At that time, as a safety protocol, Plaintiff was removed by Defendant from the secure side of the detention center (away from physical detention and interaction of juveniles) and placed on the other more administrative side of the building.

17.     When moved, Plaintiff was not given a specific role but instead was advised to sit and wait until she was needed to fill in for small assignments.

18.     In or about April of 2024 until in or about July of 2024, Plaintiff mostly sat and waited while picking up a few assignments here and there, including delivering milk to the NICU for inmates.

19.     During this timeframe, on or about June 25, 2024, Plaintiff injured her toe/foot and was required to wear a boot at work for two months.

20.     As a result of Plaintiff's aforesaid health conditions, Plaintiff suffered from pain, swelling, and mobility issues, which (at times) limited her ability to perform some daily life activities, such as driving, walking, and working (among other daily life activities).

21.     Despite her aforesaid health conditions and limitations, Plaintiff was able to perform her job well; however, she at times required some reasonable medical accommodations.

22.      For example, Plaintiff's doctor recommended light duty work and minimal walking (reasonable accommodations under the ADA) for which Plaintiff provided a doctor's note to management.

23.     Nonetheless, in or about July of 2024, Plaintiff was assigned to a post almost a quarter of a mile from the main building, in a booth, while nearing her third trimester in the intense heat.

24.     Plaintiff was required to walk from the booth to the restroom in the building, wearing the boot, against her doctor's restrictions, whenever she had to use the bathroom, approximately 7 or more times a day (a common pregnancy-related condition).

25.     Walking a quarter of a mile each way and each time in the sweltering heat was causing Plaintiff severe physical stress and exhaustion, and was not conducive to a healthy, stress-free pregnancy or the ability to heal her toe/foot.

26.     Plaintiff repeatedly stressed to management that due to her pregnancy and toe/foot injury, working in the intense heat, and walking long distances multiple times a day to use the bathroom was causing her extreme stress and discomfort, at this point in her pregnancy, and she was fearful of complications.

27.     As a result, Plaintiff requested a closer post to the bathroom and out of the extreme heat (a reasonable accommodation under both the ADA and the PWFA).

28.     Plaintiff requested a closer post to the bathroom and out of the extreme heat multiple times for weeks; however, she was not provided with a new assignment.

29.     Due to the toll and stress of these environmental conditions on her pregnancy and physical and mental health, as well as the anxiety she was experiencing and the hostile work environment it was creating, Plaintiff began to see her doctor more frequently,.

30.     It was not until Boyd saw Plaintiff struggling one day on the long trip to the bathroom in or about August of 2024, that she was placed back in the main building with a desk and chair until a new assignment suitable to her pregnancy was available.

31.    Plaintiff then sat in a room waiting for an assignment until in or about September of 2024, at which time at least 10 employees were moved from the secure side due to injuries and other reasons, and there was not enough room for all of them to wait in rooms in the administrative side.

32.    Because there were no assignments and not enough open offices and chairs, Plaintiff and the other employees were required to wait on hard metal benches with no backs, typically available for parents and inmates while waiting for court.

33.    These aforesaid metal benches were causing Plaintiff to suffer from extreme pain and discomfort due to her pregnancy, for which she needed better back support.

34.    As a result of the increasing toll the hard benches were placing on her back and body due to her pregnancy, Plaintiff requested the reasonable accommodation of being allowed to sit in her car (where she had more support and could recline her seat if needed) and to raise her legs when swollen (another common pregnancy related condition).

35.    Plaintiff informed whatever supervisor was on duty at the time she was working, and Mr. Bell, where she would be and both informed her that it was "ok," that they knew where she was, that they could call her when needed, and to just remain in the parking lot, which she did.  Notably, Plaintiff utilized this accommodation only a handful of times, when she could not find a room or comfortable seat in the main building.

36.    Around this same time, on or about August 30, 2024, Plaintiff had informed management and Human Resources ("HR") that she would be taking maternity leave, beginning October 2, 2024 (with a due date of October 15, 2024), for which she was advised that she could initially use PTO/vacation time until she was eligible for FMLA leave just a few weeks later, on or about October 16, 2024.

6

37. However, ***just one week prior*** to her maternity leave (protected by both the PWFA and eventually the FMLA), Plaintiff was called to report to Broughton, who hostilely asked where Plaintiff had been as Broughton had been purportedly looking for her.

38. In response to Broughton's aforesaid hostile demand to Plaintiff to inform her as to where she had been, Plaintiff advised Broughton that she had been sitting in her car due to not enough comfortable seating in the facility and as a result of her pregnancy, that her supervisors knew where she was, and that she was reachable by phone.

39. However, Broughton nastily replied to Plaintiff that she could not sit out in her car and had to be in the building at all times (despite that other non-pregnant and/or non-disabled individuals routinely went to their cars for breaks and even left the parking lot to run home for things during the day as long as they had permission from a supervisor).

40. Plaintiff further informed Broughton that (1) she had never been advised that she could not leave the building and, in fact, thought the parking lot was still on premises; and (2) she had the permission of several supervisors on call during the times that she needed to avail herself of the accommodation.

41. Nonetheless, Plaintiff advised Broughton that now that she was aware of the Defendant's policies, she would never do it again.

42. Yet, instead of providing Plaintiff with any progressive discipline, Broughton abruptly fired Plaintiff just one week later, on or about October 5, 2024, by email and advised Plaintiff very vaguely that she had purportedly failed her year one probation without further detail.

43. It was not until Plaintiff reached out to Defendant several times and then eventually discovered from her union that Broughton was alleging Plaintiff had violated

company policy (by utilizing the reasonable pregnancy-related and/or medical accommodation she requested) for leaving the building and waiting outside in her car until needed.

44. Prior to Plaintiff's termination, Defendant failed to accommodate Plaintiff's pregnancy-related and other health conditions by requiring her to work in unbearable and physically painful situations (set forth *supra*) that caused her mental stress as well as stress to her body and foot during her pregnancy.

45. Plaintiff was then abruptly terminated (1) because of her pregnancy and aforesaid health conditions; (2) for utilizing the aforementioned reasonable pregnancy- and medical-related accommodations, including specifically the ability to refrain from walking long distance and to wait in her car until needed, where there would be less physical stress on her body and pregnancy; and (3) and only after requesting maternity leave and/or after commencing vacation/PTO and subsequent maternity leave (all in violation of the PDA, PWFA, and the FMLA[1]).

46. Additionally, Broughton's abrupt termination of Plaintiff did not follow standard protocol, as Plaintiff was not fired in person or via personal contact by phone. Rather, she was fired by email while out on maternity leave, while not regularly checking her email, and Plaintiff believes in a clear effort to cause her to lose her health benefits for her delivery and subsequent care.

---

[1] Courts have held that the FMLA is designed to protect "pre-eligible" employees, and an employer can be held liable under FMLA for interference and/or retaliation when an employee makes his or her intent to take future FMLA leave, even if the employee was not eligible when he or she made the request. *See Sine v. Rockhill Mennonite Home*, 275 F. Supp. 3d 538, 543-44 (E.D. Pa. 2017)(holding that the FMLA protects "a pre-eligible employee who provides notice of intent to take future FMLA leave."); *see also Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1274-75 (11th Cir. 2012)(holding an employee's FMLA interference and retaliation claims should not be dismissed where an employee who prior to being eligible under the FMLA requested FMLA leave for the birth of her child that would commence after she was eligible because the FMLA protects pre-eligibility request for post-eligibility leave). In the instant case, Plaintiff clearly put Defendant on notice in or about August of 2024, that she would be taking leave for the birth of her child in or about in or about October of 2024, and would just take PTO until she became eligible for the full protection and benefits of FMLA.

47. Additionally, following her termination, Plaintiff attempted to retrieve her personal belongings by calling Defendant, but her calls were never returned, no one got back to her, and she has not retrieved or been provided with her personal belongings as of the drafting of this complaint.

48. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, retaliation, and ultimately terminated because of (1) her pregnancy; (2) her pregnancy-related and/or other actual/perceived/record of health conditions (3) her requested accommodations; (4) Defendant's failure to properly accommodate her pregnancy-related and/or other health conditions; and (5) her expressed concerns of Defendant's failure to properly accommodate her pregnancy-related and/or other health conditions.

49. Plaintiff also believes and therefore avers that her pregnancy and pregnancy-related and/or other medical conditions were motivating and/or determinative factors in the termination of her employment with Defendant.

**COUNT I**
**Violations of Title VII/PDA**
**([1] Pregnancy Discrimination; [2] Retaliation; [3] Hostile Work Environment;**
**and [3] Wrongful Termination)**

50. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51. On or about April 23, 2024, Plaintiff informed Defendant's management that she was pregnant and required pregnancy-related medical accommodations.

52. Shortly after advising Defendant's management that she was pregnant and required pregnancy-related accommodations, Plaintiff was placed in a remote position, which required her to walk a long distance in sweltering heat to use the bathroom (which she required more frequently due to her pregnancy).

53.    Plaintiff complained about this retaliatory placement and the toll it was taking on her physical and mental health, such that it was creating a hostile work environment, but her concerns were ignored.

54.    Plaintiff was then abruptly terminated, on or about October 5, 2024, for completely pretextual reasons.

55.    Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment and retaliation as the result of her pregnancy, her requested pregnancy-related accommodations, and her objections to/complaints of discrimination and/or retaliation.

56.    Plaintiff also believes and therefore avers that her pregnancy was a motivating or determinative factor in Defendant's termination of her employment.

57.    Defendant's actions of discriminating/retaliating against and terminating Plaintiff constitute violations of Title VII/PDA.

**COUNT II**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Pregnancy Discrimination; [2] Retaliation; [3] Hostile Work Environment;**
**and [4] Wrongful Termination)**

58.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.    Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC) and the charge has been pending for at least one year. The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims set forth in Count I.

**COUNT III**
**Violations of the Philadelphia Fair Practices Ordinance ("PFPO")**
**([1] Pregnancy Discrimination; [2] Retaliation; [3] Hostile Work Environment;**
**and [4] Wrongful Termination)**

60.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61.     Plaintiff properly exhausted her administrative remedies regarding her PFPO claims because she timely filed a charge of discrimination with the PHRC, and the charge has been pending for at least one year. *See e.g. Vandegrift v. City of Phila.*, 228 F. Supp. 3d 464, 482-83 (E.D. Pa. 2017) (dual-filing of charges of discrimination with the EEOC and the Pennsylvania Human Relations Commission satisfied the Philadelphia Ordinance exhaustion requirement).

62.     The aforesaid allegations also constitute violations of the PFPO. Thus, Plaintiff's PFPO claims mirror the claims set forth in Count I.

**COUNT IV**
**Violations of the PWFA**
**([1] Interference; [2] Retaliation; [3] Discrimination; [4] Hostile Work Environment;**
**and [5] Failure to Accommodate)**

63.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

64.     Plaintiff is qualified under the PWFA for protection because she was pregnant during her employment with Defendant and had requested the reasonable accommodation of a workplace closer to the building bathroom to avoid walking longer distances and the ability to not have to work in sweltering heat for long periods for pregnancy-related medical conditions, as well as maternity leave for the birth of her child.

65.     Defendant failed to properly accommodate Plaintiff's request for a workplace closer to the building bathroom to avoid walking longer distances and the ability to not have to

11

work in sweltering heat for long periods for pregnancy-related medical conditions for several weeks (resulting in increased mental and physical stress), such that it created a hostile work environment, despite that Defendant could easily have accommodated the same (set forth *supra*).

66.    Plaintiff objected to Defendant's failure to accommodate her for several weeks causing her emotional and physical stress.

67.    Defendant additionally failed to properly accommodate Plaintiff by terminating her ***just a few days after*** commencing her maternity leave for the birth of her child.

68.    Plaintiff was terminated on or about October 5, 2024, in close proximity to her requests for pregnancy-related medical accommodations and maternity leave, as well as her objections to Defendant's management's failure to properly accommodate the same, for completely pretextual reasons.

69.    Plaintiff believes and therefore avers that her rights under the PWFA were interfered with, she was subjected to a hostile work environment, and she was retaliated against for requesting reasonable pregnancy-related accommodations when she was unlawfully terminated.

70.    Defendant's actions as aforesaid constitute violations of the PWFA.

**COUNT V**
**Violations of the Family and Medical Leave Act ("FMLA")**
**([1] Interference & [2] Retaliation)**

71.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72.    Plaintiff would have been an eligible employee under the FMLA on or about October 16, 2024, under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

12

73.     Plaintiff informed Defendant, her employer, that she intended to take leave once she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

74.     Plaintiff had (or would have had) at least 1,250 hours of service with Defendant at the time she would have become eligible for FMLA leave for the birth of her child on or about October 16, 2024, had she not been terminated.

75.     Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

76.     Plaintiff would have been entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis beginning on or about October 16, 2024.

77.     Plaintiff was terminated in close proximity to her requests for block FMLA leave to bond with her newborn child.

78.     Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future when eligible; and (4) engaging in conduct which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave.

79.     These actions as aforesaid constitute violations of the FMLA.

**COUNT VI**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Failure to Accommodate)**

80.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

81.     Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

82.     Plaintiff kept Defendant's management informed of her serious medical conditions and need for medical treatment and other accommodations.

83.     Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

84.     Plaintiff requested reasonable accommodations from Defendant including but not limited to light duty work and minimal walking, as well as the ability to work closer to a bathroom to avoid prolonged walking.

85.     Plaintiff was subjected to discrimination and a hostile work environment through disparate treatment, pretextual discipline, and demeaning and/or derogatory treatment because of her aforesaid health conditions and requested accommodations.

86.     Instead of investigating Plaintiff's aforesaid complaints of/objections to discrimination and retaliation, Defendant's management ignored them and left her legitimate concerns unresolved.

87.     Plaintiff was terminated from her employment with Defendant in close proximity to her requests for/utilization of reasonable accommodations and her expressed complaints of/objections to discrimination.

14

88.    Prior to Plaintiff's termination, Defendant failed to accommodate Plaintiff by failing to initially grant Plaintiff's reasonable accommodations of limited walking or providing her work duties closer to a bathroom so that she did not have to walk an extended distance, which caused her additional mental and physical pain/stress.

89.    Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, retaliation, and ultimately terminated because of (1) her actual/perceived/record of health conditions (2) her requested accommodations; (3) Defendant's failure to properly accommodate her health conditions; and (4) her expressed concerns/objections to Defendant's failure to properly accommodate her health conditions.

90.    Plaintiff also believes and therefore avers that her disabilities were motivating and/or determinative factors in the termination of her employment by Defendant.

91.    These actions as aforesaid constitute violations of the ADA

### COUNT VII
### Violations of the Pennsylvania Human Relations Act ("PHRA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
[3] Hostile Work Environment; and [4] Failure to Accommodate)

92.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

93.    Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC) and the charge has been pending for at least one year.

94.    The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims set forth in Count VI.

15

## COUNT VIII
### Violations of the Philadelphia Fair Practices Ordinance ("PFPO")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
[3] Hostile Work Environment; and [4] Failure to Accommodate)

95.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

96.    Plaintiff properly exhausted her administrative remedies regarding her PFPO claims because she timely filed a charge of discrimination with the PHRC, and the charge has been pending for at least one year. *See e.g. Vandegrift v. City of Phila.*, 228 F. Supp. 3d 464, 482-83 (E.D. Pa. 2017) (dual-filing of charges of discrimination with the EEOC and the Pennsylvania Human Relations Commission satisfied the Philadelphia Ordinance exhaustion requirement).

97.    The aforesaid allegations also constitute violations of the PFPO. Thus, Plaintiff's PFPO claims mirror the claims set forth in Count VI.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.    Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.      Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: August 6, 2026

17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Shawna Jana'e Pannell                          :                    CIVIL ACTION
                                               :
                    v.                         :
                                               :
City of Philadelphia o/a Philadelphia Juvenile Justice Center (PJJSC)    NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x )

8/6/2026                                                                 Plaintiff
_____        _____        _____
**Date**                    **Attorney-at-law**         **Attorney for**

215-639-0801                 215-639-4970                akarpf@karpf-law.com
_____        _____        _____
**Telephone**               **FAX Number**              **E-Mail Address**

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                              Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.   Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
PANNELL, SHAWNA JANA'E

**DEFENDANTS**
CITY OF PHILADELPHIA O/A PHILADELPHIA JUVENILE JUSTICE CENTER (PJJSC)

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane   [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability   [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander   Pharmaceutical | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers'   Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | Liability   [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine   Injury Product Liability | | [ ] 840 Trademark | [ ] 460 Deportation |
| | [ ] 345 Marine Product Liability | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL PROPERTY** | **LABOR** | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle   [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability   [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury   [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice   [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights   **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting   [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment   [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations   [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [X] 445 Amer. w/Disabilities - Employment   [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other   **Other:** [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education   [ ] 550 Civil Rights | | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601); Title VII (42USC2000)

Brief description of cause:
Violations of the ADA, FMLA, Title VII/PDA, PWFA, PFPO and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   8/6/2026    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____